GEORGE H. BARKER, administrator of John H. Farrow, et al., appellants,

*v.*

FURMAN L. RICHARDSON, respondent.

The confirmation of a master's sale of lands was, by consent of all the parties, refused for alleged irregularities and surprise, but afterwards, upon an *ex parte* representation, and upon what appeared to be a satisfactory explanation of the irregularity, the sale was confirmed.—*Held*, that the court had the power, and would exercise it, upon the application of the administratrix of one of the land-owners showing surprise, and that she had had no opportunity to oppose the confirmation, to set aside the sale, although the deed for the premises had been delivered.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions:

Richardson & Farrow were partners in business. As such partners they held title to a lot forty feet wide. The title to this lot was by one deed to them as grantees. They paid for it out of partnership funds. They also owned a lot eighteen feet wide adjoining the former. The title to the latter was conveyed to them by separate deeds, each taking the equal undivided one-half, and each paying the consideration out of his own funds. They held, not as partners, but as tenants in common, although I believe it is claimed that having devoted it to partnership purposes it is liable to be sold as partnership property for the payment of partnership debts. On the eighteen-foot lot was a building used for trade and business. The said partners erected

a building on the forty-foot lot for their trade, and joined the
two buildings together and removed a portion of the side of the
one on the eighteen-foot lot so as to admit a passage from the one
to the other. In these two buildings they carried on business for
some time. At length Farrow died. The condition of the part-
nership was such that a receiver was appointed. The person
appointed was Richardson. It became necessary to sell the
real estate. Richardson, by his counsel, asked that a master
might make the sale, in order that he might bid at the sale. It
was suggested that this would prove advantageous. A master
was ordered to make the sale. The master advertised a parcel
of land for sale. On the day of sale, at first, all persons sup-
posed that the entire parcel (both the forty-foot lot and the
eighteen-foot lot) was offered for sale; but after reading the
description in the master's notice, and making a measurement of
the parcels, it was seen that the master could only sell the forty-
foot lot. But it was not then understood that the other lot was
owned by Richardson and the heirs-at-law of Barker, as tenants
in common. It was still supposed that the eighteen-foot lot was
also partnership property, and that there had only been an omis-
sion by the master from his notice of sale. The two parcels were
bid to $3,585, when the inability of the master to sell the whole
was discovered. He then offered the forty-foot parcel, and it was
bid to $60 above encumbrances (there being a mortgage upon it
for $2,000).

As soon as the solicitor of Mr. Barker, the administrator of
Farrow, learned of the sale, he informed the solicitor of the
receiver that he should resist the confirmation of it on the ground
of surprise and irregularity. The solicitors both came into court
and made a statement embodying the foregoing facts, and both
admitted that the sale was irregular and could not stand, and
desired an order directing the master to sell without the statutory
notice of two months, which was at the time refused, but at the
request of both counsel, held under advisement. Up to this
point the parties and the counsel seemed to have but little if any
disagreement as to the management of the suit in closing up the
business of the partnership. But before any other steps were

42

taken, before any order setting aside the sale of the forty-foot lot and ordering a sale of what was then supposed to be the entire partnership property (that is, both the forty-foot lot and eighteen-foot) was made, the solicitor of the receiver presented a statement to the court which exhibited the fact that the forty-foot lot was, after all, the only property held by the firm as partnership property, and that the other lot was held by them as tenants in common, and which seemed, upon its face, to dispel all allegations of mistake, surprise or irregularity. My attention had not been called to any other view of the case. I returned the statement to the solicitor, and informed him that I would advise confirmation of the sale. In a few days an order was presented, and confirmation was advised. The master made and delivered a deed to the purchaser for the forty feet.

Now the administrator of the Farrow estate comes in by petition and asks that the said deed and order confirming the said sale be set aside and declared void. This asking is on the ground of surprise and fraud. He sets up, through his counsel, that he intended to resist confirmation, and was not even heard. It is claimed that the effort at confirmation, the order confirming the sale, and the execution and delivery of the deed, were all made and done without the slightest knowledge on his part. It is claimed that all this took place after the clearest and most distinct admission on the part of the counsel of the receiver that the sale was irregular, and that the situation of things on the day of sale was a surprise to all parties interested, and that the sale could not stand, and that there must be a resale, and that the only question was whether the court had power to order the master to sell at a short day or not.

I advised confirmation, in the belief that the only ground of surprise or irregularity consisted in the fact that all persons supposed that the firm owned more real estate than it actually did, the truth about it not being discovered until several days after the sale and after the counsel had been in the court and admitted that on account of such misunderstanding the sale must fail. I did not know, nor had it been intimated, that any other point was involved.

Barker *v.* Richardson.

But it is insisted that the surprise at finding that the master could not sell the entire store building, as it appeared to have been used, extended to and affected the entire proceeding—the whole day's work—and made the entire transaction irregular and illegal. And it is insisted that, more than all, there is surprise and fraud in obtaining the order of confirmation.

First, as to the surprise and fraud in obtaining the confirmation. In the light let in since the confirmation by the testimony, there can be no doubt but that it was as great a surprise as could well be. There is no doubt but that the counsel were reposing entire confidence in each other. Therefore, with the same statements before me, I am justified in saying the surprise was complete. The administratrix was not heard, nor had she any opportunity of being heard. And does this amount to a fraud? I think so. That is as good a name as the legal vocabulary offers. The fact that it is sanctioned by the order of the court does not sanctify it. There it stands, just as hideous, however you may clothe it. Neither the good intention of the court, nor the sincerity of the counsel, nor the innocency of the purchaser, can diminish the wrong committed against the suitor who stands ready to present his case, but without the slightest omission on his part has judgment pronounced in his cause without his being heard. I have not the slightest reason to suppose that the counsel for the receiver intended any wrong. Discovering, as he did after the sale, that all the real estate owned by the firm was, after all, included in the master's notice and was sold by him, it was reasonable and natural to conclude that there was no possible necessity for a second sale. Certain it is that upon the naked facts so presented, the court so concluded.

Yet it must be admitted that this leaves out of view the rights of the other side. The court should be open to both sides. Above all, or by all means, let every person brought into court be heard. Anything short of this would shock the sense and disgrace the tribunal.

But I am met by the allegation that the order having been pronounced and the deed delivered to the purchaser, the court is powerless. I think this is a very rigid and mischievous rule

of law, if true. As to the power of the court to deal with its decrees and orders, to alter, amend or annul them, I have no doubt. In *Montgomery* v. *Williamson, 37 Md. 421, 429,* in speaking of the power of the orphans court to set aside orders confirming sales, the court said (quoting from *Raborg* v. *Hammond, 2 H. & G. 42–51*) : " But to this it may be answered that we deem the power of revocation, under such circumstances, as necessarily inherent in the orphans court and a part of the essence of the power delegated to them of granting administration." In confirmation of which, see *3 Bac. Abr. 50,* where, speaking of the ecclesiastical tribunals of England, in reference to this power, it is stated that " it would be absurd to allow a court jurisdiction herein, and at the same time deprive them of the liberty of vacating and setting aside an act of their own. Whether the order of ratification was obtained by deceit or imposition, is quite immaterial. If by honest mistake, the power of revocation and correction equally exists, provided the application for its exercise be made within a reasonable time and under proper circumstances." If this may be said of the orphans court, a creature of the statute, an inferior tribunal, much more may it be said of the power of this court. *Mutual Life Ins. Co.* v. *Sturges, 6 Stew. Eq. 328; Mutual Life Ins. Co.* v. *Goddard, 6 Stew. Eq. 482.*

But the power to revoke the order of confirmation is not all. There still remains the deed ; the purchaser has that. Can the court extend its arm to that also? It has been ably contended by the counsel of the purchaser that he is beyond the reach of the court, however great the wrong. I am not convinced that the deed, so delivered under the order, creates any such unassailable protection. The courts do often set aside sales, declare orders of confirmation nullities, and decree that deeds are fraudulent and that the grantee takes nothing thereby. Numerous are the cases in which fraud has been alleged and proved, establishing this right and showing the exercise of this power.

In this case the purchaser is before the court resisting the motion to set aside his deed and the order of confirmation. The court has jurisdiction of the subject-matter and of the parties. I can find nothing in the way so sacred as to be immovable.

Another important matter, which, in one sense, involves all the foregoing, is the value of the property. It is urged that the premises brought a fair price. On this point the testimony is somewhat in conflict. But I am nevertheless not a little influenced by the belief that under the circumstances, the master's sale was not a fair test. There was room for so much confusion and uncertainty in the minds of the bidders as to cause hesitation on their part. It is true the amount of land offered for sale was at length reduced to a certainty, or it was so claimed and now so turns out. But it by no means follows that the minds of men then were set at rest so soon after the manifest uncertainty that for a time existed.

In this regard, I think no one can read the testimony respecting what the master said after the first attempt at a sale was abandoned, without the unqualified conviction that no prudent business man would bid at the second offering except for the merest purpose of speculation. I regard the affair as a mere experiment, there not being in the mind of any one present a reasonable presumption that the court would confirm the sale. And that this was the conviction of the experienced counsel of the receiver, I have no doubt. Therefore I conclude that the statutory test, a fair and open public sale, was not reasonably applied. This being so, there should be another sale.

But the course of the receiver ought to be considered. He asked to be relieved from making the sale, that he might bid on the property. Now, no one will pretend that he would have done this had he believed that there was an equity of only $60 in the property, and at that sum would have allowed the title to pass to a stranger. The $60 perhaps will not cover the costs and expenses of the master. However, it may be said that he too was misled, and really supposed that all the real estate was held in partnership. The law cannot presume that; nor can he be heard against his own deed. But if he was in any such uncertain state as to his title, it may well be seen that the reason for the hesitation of others was abundant.

The premises were struck off to Mr. Hildreth, and the receiver was his son-in-law. An effort was made to show that Mr.

Hildreth was the agent of the receiver. I can see nothing in that to complain of. He had a right to employ an agent. Yet, although this is so, I have less hesitation in advising as I shall, because of the conviction that Mr. Hildreth was acting in the interests of the receiver, though it may be never a word passed between them on the subject. I think this is shown in the testimony of Edmunds, wherein he details the interview between himself and Hildreth respecting the renting of the store by the receiver. I am aware that Mr. Hildreth said he had no recollection of the interview on that head.

I will advise a decree setting aside the said order of confirmation as void and of no effect, and declaring the said deed to be void and of no effect. I will also advise that the said land and premises be again advertised for sale, according to the statute in such case provided, by the said master.

*Mr. S. H. Grey*, for the appellant George Hildreth.

*Messrs. Garrison & French*, for the respondents.

PER CURIAM.

This decree unanimously affirmed, for the reasons given by the vice-chancellor.